IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| ALICIA MCFADDEN ) | |
| & ) | |
| CHAUVON MCFADDEN ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No:_____ |
| EQUIFAX INFORMATION SERVICES, LLC. ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiffs Alicia McFadden and Chauvon McFadden ("Plaintiff"), by and through counsel, brings this Complaint against Defendant Equifax Information Services, LLC ("Defendant" "Equifax") on the grounds and in the amounts set forth herein:

### Preliminary Statement

1. The Plaintiffs bring this case against Equifax for its violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.* based upon its inaccurate, negligent, and reckless internal processes and investigations into a disputed TD Auto Finance account. Equifax violated the FCRA by failing to conduct reasonable investigations because it failed to remove an account from the Plaintiffs' credit report with clearly factually inaccurate and/or misleading information. Plaintiffs demand actual damages, punitive damages, statutory damages, attorneys' fees, and costs based upon Equifax's actions.

## Parties

2.  Plaintiffs Alicia McFadden and Chauvon McFadden are natural persons. Plaintiffs are residents of the Commonwealth of Virginia and are a "person" and "consumer" as defined by the FCRA at 15 U.S.C. §1681a(b) and (c) because they are individuals.

3.  Defendant Equifax Information Services, LLC, (hereinafter "Equifax"), is a foreign limited liability company with a principal office address in Georgia. Equifax is a consumer reporting agency, as defined in section 1681(f) of the FCRA, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in section 1681a(d) of the FCRA, to third parties. Equifax regularly conducts these business activities in the Eastern District of Virginia by providing credit reports and other products to consumers and businesses in the Alexandria division of the Eastern District of Virginia.

## Jurisdiction & Venue

4.  This court has jurisdiction pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681(p). Venue is proper in this jurisdiction. Plaintiffs reside in the Alexandria Division of the Eastern District of Virginia and that forum is the forum most convenient for the adjudication of their claims. Defendant Equifax is a resident of the Alexandria Division of the Eastern District of Virginia because it is subject to the court's personal jurisdiction by providing credit reports and other products to consumers and businesses in this division and district.

## Factual Allegations

5.  Plaintiffs owned a 2020 Mercedes Benz GLE class that they had financed with TD Auto Finance.

6. As of June 2022, Plaintiffs had made every automobile installment loan payment on time with TD Auto Finance.

7. On or about June 30, 2022, the Plaintiffs went to an automobile dealership to inquire about purchasing another vehicle, a 2020 Mercedes Benz GLS Class. The Plaintiffs ultimately purchased the 2020 Mercedes Benz GLS on June 30, 2022.

8. As part of the negotiations for the GLS, the parties discussed trading in their other Mercedes. The McFaddens did not bring that vehicle to the dealership, and the original agreement to trade the vehicle was reversed such that the trade vehicle was removed from the transaction.

9. Despite the fact that the parties agreed that the trade vehicle would not be included in the transaction, the dealership's finance department treated the transaction as if they had. Based upon that mistaken belief, the dealership tendered a pay-off check to TD Auto Finance.

10. On July 8, 2022, TD Auto Finance accepted the funds from the dealership for the pay-off of the 2020 Mercedes Benz GLE. TD Auto Finance also refunded the last regular monthly payment that the Plaintiffs made on the car loan.

11. TD Auto Finance released the lien on the 2020 Mercedes Benz GLE on July 16, 2022 and issued a letter to the Plaintiffs informing them that the account was paid in full as of July 8, 2022.

12. The dealership discovered its mistake in making the payoff on the 2020 Mercedes Benz GLE, but failed to resolve the error that it had caused. At that point the most logical resolution would have been to reverse the payment and reinstate the loan, but apparently TD Bank would not allow that.

13. Once the payoff had been received and TD Bank had released its lien on the vehicle, TD Bank closed the auto loan and was unwilling to reopen or reinstate it. At that point, the McFaddens could no longer access the loan information on line, their auto payment had been cancelled and TD Bank reported to the credit bureaus that the loan had been paid and satisfied with a $0 balance.

14. For reasons that have not been explained by TD Bank and need to be investigated through discovery, it decided to refund the payoff funds to the dealership more than seven months later. To make matters even more bizarre, TD Bank reported to Equifax that the account was in default and charged off as a bad debt before it even refunded the funds to MB of Hunt Valley. While TD Bank had the full amount of the payoff, it adjusted its accounting entry to show that the payoff in July had been reversed.

15. Based upon information and belief, all of this information would have been available to Equifax as part of any credit dispute reinvestigation. In all likelihood, Equifax simply engaged in its outsourced credit dispute reinvestigation system rather than conduct a detailed systematic inquiry into the dispute.

16. Instead of resolving the problem, TD Auto Finance began falsely reporting to the credit bureaus that this loan that had been previously credit reported as paid in full as now past due and in default for time periods when the loan had been marked paid in full on time.

17. Because the Plaintiffs were never late on a payment on the loan, their last payment had been returned to them, and TD Auto Finance closed the account so they no longer could make payments, it is both factually inaccurate and misleading for TD Auto Finance to credit report this closed account as 30 days late 60 days late etc. on the Plaintiffs credit

history. Equifax retains frozen data scans that can show the data reported changed over time. Equifax knows or should have known that its data changed in a manner that made its credit reporting inaccurate and misleading.

18. As joint obligors on the loan, TD Auto Finance was inaccurately reporting the account on both Mr. and Mrs. McFadden's credit files.

19. TD Auto Finance's actions are conflicted. After closing the account and no longer accepting monthly payments, it proceeded more than seven months later to report that the Plaintiffs had fallen behind on making payments that TD Auto Finance would no longer accept.

20. Because the Plaintiffs were not getting any assistance from the car dealership or TD Auto Finance to change the clearly inaccurate account credit reporting, the Plaintiffs disputed the credit reporting of the TD Auto Finance account with Equifax.

21. The credit reporting agencies, like Equifax, were in the best position to resolve the Plaintiffs credit reporting inaccuracies because the objective evidence clearly demonstrated the inherent problems with the credit reporting for the account. This was not a routine situation where a consumer defaulted on an automobile loan. The Plaintiffs had contracts, letters, and a payment history that demonstrated what had happened and why the data reported by TD Auto Finance was inconsistent with prior data, misleading, and not maximum possible accuracy about the account.

22. The FCRA requires maximum possible accuracy regarding credit data reported by credit reporting agencies. Misleading information is inaccurate information because it does not meet the maximum possible accuracy standard. "Accurate" and "Truthful" information in the FCRA context means that when credit data is viewed in its entirety and context, the

information does not create a false or unfair impression about the consumer's creditworthiness.

23. Equifax never had to resolve any disputes to report accurate credit data because it knew the data changed for similar periods of time. The obvious answer for Equifax was to suppress the credit reporting of the TD Auto Finance account because of the circumstances.

24. On or about June 26, 2023, the Plaintiffs each mailed a credit dispute letter to Equifax to have the inaccurate and misleading TD Auto Finance account credit reporting removed from their respective credit reports. The credit dispute letter was descriptive and detailed the events related to the account, how the account should not have been handled the way it was by TD Auto Finance, and why the credit reporting was factually inaccurate because the account could not be past due for payments on an account that TD Auto Finance would no longer accept or post. The letter also included attachments including the purchase contract showing that there was no trade-in and the pay-off letter from TD Auto Finance, which demonstrated that the loan was paid off and terminated. The irrefutable documentation proved that TD Auto Finance considered the account paid in full when the dealership tendered the payoff check. The Plaintiffs requested that the account be deleted from their credit history because the manner that Equifax reported the account was inaccurate and misleading given the totality of the circumstances.

25. Chauvon McFadden received notice of the results of the reinvestigation from Equifax dated July 24, 2023. Equifax declined to suppress or delete the credit reporting for the account. In the payment history data section of the trade line, Equifax reported that the account was paid on time for every month up until June 2022 with no additional data reported after June 2022. Thereafter, Equifax reported a seven month gap in historical

account data with a $44,690 balance reported for February of 2023. This historical account data was patently different than what Equifax reported on the status codes for the account history. Equifax necessarily ignored Mr. McFadden's descriptive credit dispute letter with supporting documentation and simply reported what the furnisher told Equifax to report as part of the ACDV response. As a result, Equifax reported misleading and inaccurate data regarding the accuracy of the account.

26. Alicia McFadden received her results of Equifax's reinvestigation dated July 24, 2023. Equifax reported the account as a charge-off with an unpaid balance of $45,438 and a Charge-Off Amount of $44,659. The historical account information reflected that the account had been timely paid until the problem occurred and that there was no historical data available for seven months prior to entire account balance reported as past due ($4,690 in February 2023). If Equifax had conducted a proper reinvestigation that reviewed the credit dispute package in conjunction with the underlying account data, and the furnisher's responses, Equifax could clearly see there was an issue with the credit reporting for the account that should have resulted in a suppression of the misleading data. Equifax can suppress credit reporting data, while the parties pursue their respective positions with one another. Rather than suppress disputed data, Equifax allows furnisher's like TD Bank to park challenged derogatory data on a consumer's credit file because it gives the furnisher leverage over the consumer as their credit rating is destroyed.

27. On December 1, 2023, the McFaddens once again disputed the reporting of the TD Auto Finance account with Equifax by mailing a descriptive dispute letter that laid out the unusual circumstances of the transaction.

28. The dispute letter noted that TD Auto Finance mistakenly received a payoff check from Mercedes Benz of Hunt Valley. TD Auto Finance applied the payoff check to the account, marked the account paid, released the lien, and returned the last monthly payment that had been tendered for payment on the account.

29. The letter reported what they believed to be the case at the time, but after further investigation the facts became even worse than they had originally believed. Despite the fact that TD Auto Finance knew that the dealership created this problem and exacerbated it by improper processing, TD Auto Finance still refused to accept responsibility for its improvident and untimely actions. All of these events were documented in correspondence that TD Auto Finance issued to the Plaintiffs.

30. The credit dispute letter noted that TD Auto Finance refused to correct the credit reporting mess that it created on the account and reported as derogatory for lack of payment despite the fact that TD Auto Finance had closed the account and shut down access to the online payment portal for the account.

31. The credit dispute further noted that TD Auto Finance had sent the account to collections and that the Plaintiffs had disputed the validity of that collection account as well based on the circumstances of the loan.

32. The credit dispute letter also asked Equifax what it did to reinvestigate the credit reporting as this was a highly unusual credit reporting situation.

33. Finally, the Plaintiffs requested that Equifax add a consumer statement to their credit file because of the unusual nature of the account and transaction.

34. The January 5, 2024 results to Alicia McFadden and Chauvon McFadden stated the investigation was complete, and Equifax deleted the credit reporting for the TD Auto

Finance account. Discovery is necessary as to whether Equifax notified TD Auto Finance or any other credit reporting agency that Equifax had deleted the account from the McFadden's credit file.

35. Plaintiffs suffered an injury in fact in the form of loss of time spent disputing Equifax's inaccuracies and reviewing responses to her disputes. They had damages including the monetary costs associated with disputing, worry, frustration and emotional distress damages related to the effect of the inaccurate credit reporting. Plaintiffs also suffered from current creditors receiving false and misleading information from Equifax that limited their ability to receive and ask for higher credit limits with existing creditors.

36. Fourth Circuit case law is clear that emotional distress damages are proper based upon Plaintiff's testimony as to the effect of the violation of the FCRA on the Plaintiff. *See Sloane v. Equifax Information Services, LLC*, 510 F.3d 495 (4th Cir. 2007); *See also Robinson v. Equifax Information Services, LLC*, 560 F.3d 235, (4th Cir. 2009). This circuit's case law on emotional distress damages is consistent with case law in other circuits: "damages for violations of the FCRA allow recovery for humiliation and embarrassment or mental distress even if the plaintiff has suffered no out-of-pocket losses. Moreover, a consumer may be awarded actual damages even if she is able to obtain credit after explanation of the inaccuracy." *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 719 (3rd Cir. 2010). The Ninth Circuit has also noted that actual damages include recovery for distress and humiliation and noted, "Moreover, no case has held that a denial of credit is a prerequisite to recovery under the FCRA." *See Guimond v. Trans Union Credit Info. Corp.*, 45 F.3d 1329, 1333 (9th Cir. 1995). The Fourth Circuit similarly noted, "On his FCRA claims Dalton need only show that he suffered damages from the false report,

regardless of how Sumitomo reacted to the report. Specifically, Dalton alleges that he suffered emotional distress and loss of reputation as a result of the false report. Damages for such injuries are recoverable under FCRA." *Dalton v. Capital*, 257 F.3d 409, 418 (4th Cir. 2011).

38. The Plaintiffs experienced emotional distress upon reviewing Equifax's reinvestigation results in July 2023, which showed that their credit file inaccurately reported a defaulted TD Auto Finance account. This was particularly distressing as Equifax, in effect, allowed TD Auto Finance to negatively impact their credit by reporting derogatory information on an account that had been marked paid and closed by a furnisher with a subsequent reversal that back dated the reporting in a manner to make the account report as if it were delinquent. Equifax's reporting was misleading, factual inaccurate as to that period of time and very disruptive to Plaintiffs' lives and credit file.

## COUNT I
## Fair Credit Reporting Act
## 15 U.S.C. §1681i

38. Plaintiff incorporates paragraphs one (1) through thirty-seven (37) as if fully stated herein.

39. The FCRA's stated purpose is to require consumer reporting agencies to adopt reasonable procedures so that information about consumers is confidential, accurate, and relevant. *See* 15 U.S.C. §1681(b). "The legislative history of the FCRA reveals that it was crafted to protect consumers from the transmission of inaccurate information about them and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Guimond v. Trans Union Credit*

*Information Comp.*, 45 F.3d 1329,1333 (9th Cir.). The FCRA's intent to protect consumers supports a liberal construction of the act. *Id.*

40. In an effort to implement an orderly systemic dispute process for investigations of inaccuracies of information in a consumer's credit file, the FCRA requires that a consumer first notify a CRA of a dispute of information in their credit file. After receiving notice of a consumer dispute, 15 U.S.C. §1681i(a) requires a CRA to conduct a reasonable and independent investigation of the information it is reporting on the consumer and states:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by a consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute the agency **shall**, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the deleted information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.　15 U.S.C. §1681i(a)(1)(A) (emphasis added).

41. Defendant Equifax has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comply with its obligations as a credit reporting agency under the FCRA. Equifax is liable to the Plaintiffs for damages under 15 U.S.C. §1681n and §1681o because it violated numerous provisions of the FCRA at 15 U.S.C. §1681i.

42. Defendant Equifax through its established systems and procedures negligently and willfully violated the FCRA at §1681i(a) by failing to reinvestigate reasonably and/or recklessly the credit disputes in July 2023 by failing to review and consider the credit dispute packages that it received from both plaintiffs individually. Only unreasonable and reckless reinvestigations would have resulted in Equifax ignoring that Plaintiffs provided proof that TD Auto Finance had marked the account paid in full, released the lien, returned

the last monthly payment, and closed on-line access only to reverse course and report every monthly payment thereafter as late when TD Auto Finance caused the problem in the first place. There was a simple objective factual situation regarding the previous pay-off that should have resulted in Equifax simply removing the account from the Plaintiffs' credit files so that they could make arrangements to get another form of credit to pay-off the TD Auto Finance account. Instead, Equifax blindly relied on its outsourced "parroting" process to ignore the totality of the circumstances related to the account.

43.  The FCRA specifically requires at 15 U.S.C. §1681i(a)(4) that Equifax in conducting any reinvestigation, "shall review and consider all relevant information submitted by the consumer," which Equifax could not possibly have undertaken when it received the credit dispute packages based upon the wealth of information that it received from the Plaintiffs regarding the dealership pay-off, closure of the account, and subsequent return of payment.

44.  Plaintiffs also seek discovery on Equifax's compliance with 15 U.S.C. §1681i(a)(5)(A)(ii) because no evidence has been seen that TD Bank received a notice from Equifax that it deleted the TD Auto Finance account from the file of either Plaintiff.

45.  Based upon prior cases with Equifax, it is readily apparent that it fails to conduct the quintessential step in the consumer dispute process: consider the information and determine if the disputed account data can be verified as accurate. The outsourced dispute processors that Equifax utilizes to process the consumer disputes reportedly conduct no evaluation of the validity of the disputed data and merely code the response from the furnisher like TD Auto Finance to be automatically accepted and updated.

46.     Plaintiffs suffered actual damages including time spent addressing the problem, improper denial of access to credit, damages to their credit rating and score, withholding themselves from the credit market, and emotional distress damages.

47.     Punitive damages are required to change Equifax's reckless disregard for compliance with the FCRA. Equifax's dispute investigation process in this case demonstrates the recklessness that it handles consumer disputes because Equifax shirks its responsibility to conduct meaningful and reasonable investigations by exclusively relying on the outsourced and automated ACDV process. By hiring and employing low-cost, outsourced processors that Equifax cannot reasonably rely upon to make the critical decision as to what can be verified and what cannot, it has established a procedure designed to evade its obligations as set forth in the FCRA and §1681i in particular. Equifax simply relied on the outsourced ACDV processors without any real consideration of the circumstances related to the credit reporting on the Plaintiffs' Equifax credit file. These actions were in reckless disregard for the grave statutory duties that Equifax had for reporting accurate information. The jury should award substantial punitive damages based on these facts.

### COUNT II
### Fair Credit Reporting Act
### 15 U.S.C. §1681e(b)

48.     Plaintiff incorporates paragraphs one (1) to forty-seven (47) as if fully stated herein.

49.     Defendant Equifax has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comply with its obligations as a credit reporting agency under the FCRA. Equifax is liable to the plaintiff for damages

under 15 U.S.C. §1681n and §1681o because it violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the plaintiff's credit report.

50. Equifax willfully and/or negligently violated the Fair Credit Reporting Act at 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of information reported about Plaintiffs because Equifax is believed to have provided inaccurate credit file information about Plaintiffs to users of information related to the Plaintiffs credit history including Capital One. Additional discovery is necessary regarding what Equifax published about Plaintiffs as they were trying to obtain funds to payoff the TD Auto Finance account. The Plaintiffs are also believed to be the subjects of account review inquiries that would have included Equifax credit information.

51. Plaintiffs suffered actual damages including time spent addressing the problem, improper denial of access to credit, and emotional distress damages.

52. Punitive damages in this matter are also warranted because Equifax displayed a reckless disregard for publishing information when a consumer notifies it of how factually challenged the credit reporting for the account has been. Equifax knows that it is unreasonable to publish inaccurate information by simply parroting whatever the furnisher tells them to report. Equifax is on notice from other verdicts in the Eastern District of Virginia that parroting furnisher responses may lead to a finding of FCRA liability Only substantial punitive damages will deter Equifax from publishing inaccurate credit reports without considering all the information it contains on a consumer prior to publishing the report.

## Prayer for Relief

Wherefore, plaintiffs pray that the Court award the following relief:

a) compensatory damages against Equifax;

b) punitive damages based upon Equifax's repeated violations of the FCRA;

c) statutory damages against Equifax based upon multiple violations of the FCRA;

d) interest, pre-judgment interest, costs and reasonable attorneys' fees incurred by the Plaintiffs;

e) all other further relief that this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury as to all issues against the defendant.

Respectfully submitted,
Alicia McFadden
Chauvon McFadden

By: Counsel

A. Hugo Blankingship, III, VSB 26424
Blankingship & Christiano, P.C.
11862 Sunrise Valley Drive, Suite 201
Reston, Virginia 20191
(571) 313-0412
(571) 313-0582